## Commonwealth v. Trousdale.

June 6, 1944.

725

Hubert Meredith, Attorney General, and F. B. Martin, Commonwealth's Attorney, and Farland Robbins, County Attorney, for appellant.

No brief filed for appellee.

OPINION OF THE COURT BY JUDGE REES—Certifying the law.

W. W. Trousdale was convicted in the Graves quarterly court under a warrant charging him with "the offense of carrying into the local option territory of Graves County intoxicating liquor, to wit, beer of alcoholic content of more than one per cent by volume, for the purpose of personal consumption, thereby violating KRS 242.260." He appealed to the Graves circuit court where a demurrer to the warrant was sustained. From the judgment dismissing the warrant the Commonwealth has appealed for certification of the law.

The trial judge sustained the demurrer to the warrant on the ground that KRS 242.260, in so far as it purports to prohibit the bringing of alcoholic beverages into local option territory for personal use, is unconstitutional, basing his ruling on the opinions of this court in Commonwealth v. Campbell, 133 Ky. 50, 117 S. W. 383, 24 L. R. A., N. S., 172, 19 Ann. Cas. 159, Commonwealth v. Smith, 163 Ky. 227, 173 S. W. 340, L. R. A. 1915D, 172, and Voils v. Commonwealth, 187 Ky. 526, 219 S. W. 1079. The pertinent part of KRS 242.260 reads: "It shall be unlawful for any person or public or private carrier to bring into, transfer to another, deliver or distribute in any local option territory any alcoholic beverage, regardless of the name by which it may be called. Each

package of such beverage so brought, transferred or delivered in such territory shall constitute a separate offense.''

The opinions in the Campbell, Smith, and Voils cases are severely criticized in the brief for appellant, and it is insisted that they are not in consonance with more modern views on the subject and that these cases should no longer be followed. In view of our conclusion that the Legislature, in enacting KRS 242.260, did not intend to prohibit a person from carrying into dry territory alcoholic beverages for his personal use, we do not reach the constitutional question argued in appellant's brief. In the construction of a statute, the general rule is that where it is expressed in general language it is to be applied to all cases coming within its terms and the court may not restrict or qualify it. However, the precise words of a statute may be restricted or words may be transposed or supplied where that is necessary to obviate inconsistency and give effect to the manifest intention of the Legislature and to carry out the general scope and purpose of the act. May v. Clay-Gentry-Graves Tobacco Warehouse Company, 284 Ky. 502, 145 S. W. 2d 84; Commonwealth v. Bartholomew, 265 Ky. 703, 97 S. W. 2d 591. In ascertaining the legislative intent the entire act in which the section invoked by appellant is a part must be considered, since the different parts of a statute reflect light upon each other. Dougherty v. Kentucky Alcoholic Beverage Control Board, 279 Ky. 262, 130 S. W. 2d 756; Burton v. Mayer, 274 Ky. 245, 118 S. W. 2d 161; Mann v. Humphrey's Adm'x, 257 Ky. 647, 79 S. W. 2d 17, 96 A. L. R. 584. Section 18 of the Local Option Act, as incorporated in the Kentucky Revised Statutes as part (1) of section 242.230, reads: ''No person in dry territory shall sell, barter, loan, give, procure for or furnish another, or keep or transport for sale, barter or loan, directly or indirectly, any alcoholic beverage.''

And section 37 of the Act, as incorporated in the Kentucky Revised Statutes as part (2) of section 242.-230, reads: ''No person shall possess any alcoholic beverage unless it has been lawfully acquired and is intended to be used lawfully, and in any action the defendant shall have the burden of proving that the alcoholic beverages found in his possession were lawfully acquired and were intended for lawful use.''

Section 23 of the Act, KRS 242.270, provides that no person shall sell or deliver any alcoholic beverages that are to be paid for on delivery in dry territory. Section 21 of the Act, as incorporated in section 242.280 of the Kentucky Revised Statutes, reads: "It shall be unlawful for any person of dry territory to receive or accept any alcoholic beverage from a common carrier or from any person who has transported such liquor in or into such territory for compensation, hire or profit of any kind whatsoever either directly or indirectly. Each and every package of said alcoholic beverage so received or accepted shall constitute a separate offense."

Throughout the Act the Legislature was dealing with illegal trafficking in alcoholic beverages in local option territory. Standing alone, KRS 242.260 might reasonably be construed as prohibiting a person from carrying into local option territory alcoholic beverages for his personal use, though lawfully obtained, since the words "bring into" are not qualified or restricted, but when that section is read with the other sections of the Act we think the logical conclusion is that the Legislature had no intention to prohibit an individual from carrying into dry territory alcoholic beverages for his personal use. This is the clear implication of the sections of the Act preceding and following section 20. Our conclusion is fortified by the fact that section 20 of the Local Option Law, enacted in 1936, is substantially a re-enactment of a similar section of the Local Option Law in force prior to the adoption of the prohibition amendment to our Constitution which became effective June 30, 1920.

The section of the old Act which was construed in Voils v. Commonwealth, 187 Ky. 526, 219 S. W. 1079, read: " 'It shall be unlawful for any person or persons, individual or corporation, public or private carrier, to bring into, transfer to other person or persons, corporation, carrier or agent, deliver or distribute in any county, district, precinct, town or city, where the sale of intoxicating liquors has been prohibited, or may be prohibited, whether by special act of the General Assembly or by vote of the people under the local option law, any spirituous, vinous, malt or other intoxicating liquor, regardless of the name by which it may be called.' "

Manifestly the present section is a re-enactment, in substance, of the law in force when the opinion in the

Voils case was rendered. As said in appellant's brief, "the main difference seems to be a more economical use of language in the present section with no loss of meaning." In construing the quoted section of the old law, the court in the Voils case said: "We offer no criticism of the statute, nor of the salutary effect it was intended to have in destroying the unlawful business of the bootlegger; but, looking to its language alone, we fail to find any provision that can be invoked to prevent a person, owning and having in his possession by lawful means spirituous, vinous or malt liquors solely for personal use in his own home, from carrying it in his custody by public or private conveyance to his home, or that would prevent the owners of such conveyance from carrying him as a passenger to that home, accompanied by the whisky lawfully in his possession, although the home may happen to be located in a county where the sale of such liquors is prohibited by law. It would be an anomalous situation indeed if we should find it necessary to declare that, although Eastham and his companions were lawfully in possession of the whisky they purchased at Lebanon, and well within their rights under the statute, supra, in having themselves and their whisky carried by appellant to their homes, the latter, notwithstanding the lawfulness of their acts, was properly punished in the court below, because of the assistance he rendered them."

After quoting from the opinions in the Campbell and Smith cases, the court said: "As under the authorities, supra, Eastham and his companions, who purchased the whisky, and by reason of their possession of it and relation to appellant and his automobile as passengers controlled its transportation into the prohibited territory, were not amenable to the punishment prescribed by the statute in question, a fortiori should appellant have been excused for the part he took in the transaction."

It is a generally recognized rule of statutory construction that when a statute has been construed by a court of last resort and the statute is substantially re-enacted, the Legislature may be regarded as adopting such construction. City of Mayfield v. Reed, 278 Ky. 5, 127 S. W. 2d 847; Boston v. City of Augusta, 234 Ky. 500, 28 S. W. 2d 509; Coleman v. Inland Gas Corporation, 231 Ky. 637, 21 S. W. 2d 1030; Hall v. Smith-McKenney Company, 162 Ky. 159, 172 S. W. 125; May v.

Commonwealth, 160 Ky. 785, 170 S. W. 493. Cf. Greene v. Jones, 170 Ky. 757, 186 S. W. 675. In 50 Am. Jur., Statutes, Sec. 321, it is said: "As an aid in the construction of a statute, it is to be assumed or presumed that the legislature was acquainted with, and had in mind, the judicial construction of former statutes on the subject, and that the statute was enacted in the light of the judicial construction that the prior enactment had received, or in the light of such existing judicial decisions as have a direct bearing upon it."

In Ray v. Spiers, 281 Ky. 549, 136 S. W. 2d 750, we had before us for construction a section of the Local Option Law adopted in 1936, which was a substantial re-enactment of a similar section in the old Local Option Law. The section in the old law had been construed by this court in the case of Early v. Rains, 121 Ky. 439, 89 S. W. 289. In holding that the Legislature, in re-enacting the section of the prior law, adopted the construction thereof in Early v. Rains, this court said [281 Ky. 549, 136 S. W. 2d 754]: "The present section 2554c-2, supra, is a re-enactment of the original section 2554 in force at the time that opinion was written, the re-enactment being chapter 1 of the Session Acts of 1936. In the re-enacted section the legislature incorporated nothing therein militating against the interpretation made by us in the Rains case, and under a well-known principle of law it is to be presumed that the re-enactment was made and done with the intention of incorporating that interpretation in the re-enacted statute."

In Long v. Smith, 281 Ky. 512, 136 S. W. 2d 789, we had before us another section of the present Local Option Law, a substantial re-enactment of a section of the prior law on the subject which had been construed by this court. In the opinion it was said "the present local option law is substantially a reenactment of the local option law in force prior to national prohibition," and the opinion concluded: "In reenacting substantially the provisions of the old local option law, the General Assembly had before it the construction placed on that act by this court, and if it had desired a different result it undoubtedly would have said so in plain and unmistakable language."

It follows from what has been said that the trial judge correctly sustained the demurrer to the warrant regardless of the reason assigned for his ruling.

730

It may be said in passing that the overruling of the Campbell, Smith, and Voils cases, supra, and the construction of KRS 242.260, as contended for by appellant, would not render appellee liable under the warrant in view of the rule that where there has been a decision by a court of last resort that a criminal statute does not apply to a certain act and the decision has later been overruled, the commission of a like act during the interval of time between the two decisions is not punishable under the statute. Wilson v. Goodin, 291 Ky. 144, 163 S. W. 2d 309; 15 Am. Jur., Criminal Law, Sec. 308.

The foregoing is certified as the law.

The Whole Court sitting.