RENDERED: MARCH 29, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0260-MR

ALJERMAINE FOY AND
SAVANNAH FERRELL                                                    APPELLANTS


APPEAL FROM JEFFERSON CIRCUIT COURT
v.        HONORABLE SUSAN SCHULTZ GIBSON, JUDGE
ACTION NO. 19-CR-000946


COMMONWEALTH OF KENTUCKY                                       APPELLEE



OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ACREE, EASTON, AND JONES, JUDGES.

ACREE, JUDGE:  Appellant, Savannah Ferrell, appeals the Jefferson Circuit
Court's February 18, 2022 Order forfeiting the entirety of Appellant Aljermaine
Foy's full cash bond upon Foy's subsequent arrest.  Ferrell, who was surety for the
bond, argues that the circuit court erred in granting the motion.  Finding no error,
we affirm.

# BACKGROUND

In March of 2019, a grand jury indicted Foy on charges of Attempted Murder, Assault in the First Degree, and Assault in the Second Degree. A warrant for Foy's arrest was issued contemporaneous with the indictment, and he was subsequently arrested. During arraignment, Foy entered a plea of not guilty, and the circuit court set Foy's bond at $100,000, full cash. In its signed order, the circuit court required Foy commit no additional criminal offenses as a condition of his release. The order directs that, should he violate the conditions of his release, a warrant will be issued for Foy's arrest and his bond will be revoked. On the face of the order, a field for the circuit court to add additional nonfinancial conditions for Foy's release was left blank.

Ferrell, a volunteer with the Louisville Bail Fund ("the Fund"), posted Foy's bond in August 2020. Ferrell did so on behalf of, and at the direction of, the Fund. When she posted the bond, Ferrell, as surety, signed an AOC-356.1 form, the standard administrative form filled out when an arrestee is granted pretrial release from custody. The form includes options for release conditions; on Foy's form, several conditions are selected, including "[n]o further violations of law." Additionally, the form states that the court may issue an arrest warrant and order forfeiture of the bond if Foy failed to comply with the conditions of his release.

-2-

Ferrell signed the form as surety, agreeing to "undertake that [Foy] will appear and be amenable to the orders and process of this and any other court in which this proceeding may be pending for any and all purposes and at all stages." Foy also signed the form beneath a statement that Foy "understand[s] and agree[s] to the penalties which may be imposed on [him] for willful failure to appear or violation of any condition of release and to appear as required." He also acknowledged that he "ha[s] received a copy of this order and any bail bond."

Foy pleaded guilty to all charges on July 19, 2021. The court scheduled sentencing for October 18, 2021. However, on September 21, 2021, the St. Matthews Police Department arrested Foy and charged him with Strangulation in the First Degree and Assault in the Fourth Degree. Foy was subsequently sentenced to ten years under the first indictment.

The Commonwealth then filed a motion for forfeiture of the posted bond, and the circuit court held a hearing on the motion. The parties agreed that Foy had new, pending charges. Ferrell, the only witness, testified that the Louisville Bail Fund researches each case to decide whether to provide bond money, and that the Fund is familiar with the concept of bond conditions. She testified that the Louisville Bail Fund provided a social worker to Foy, with whom Foy ultimately did not maintain contact.

Following briefing, the circuit court ordered the entire bond forfeited. In its order, the court noted the condition that Foy commit no further offenses was plainly marked on the AOC-365.1 form, thus putting Ferrell, as surety, on notice that this was a condition of Foy's release. Ferrell now appeals.

## ANALYSIS

"[D]iscretion regarding bond issues lies with the trial court." *Clemons v. Commonwealth*, 152 S.W.3d 256, 260 (Ky. App. 2004). Thus, we review a trial court's bond revocation decision for abuse of discretion. *Id*. A trial court's ruling constitutes an abuse of discretion if it is "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

Ferrell's first and second arguments are interconnected. She argues the circuit court did not properly place nonfinancial conditions – *i.e.*, requiring Foy to not commit any further offenses – on the bond because the court's orders entered following arraignment and pretrial conferences did not provide notice of these conditions. She also argues the AOC-365.01 form cannot be treated as a court order to provide such notice.

"Nonfinancial conditions may be imposed upon any bail bond[.]" RCr[1] 4.04(2). "[S]o far as this Court is aware, in every case where a nonfinancial

---

[1] Kentucky Rules of Criminal Procedure.

condition has been contemplated as a basis of bond forfeiture, the nonfinancial condition at issue was – whether by a checked box, filled-in blank, or otherwise – explicitly stated in an effective court order and ensuing bond agreement." *Passmore v. Commonwealth*, 580 S.W.3d 558, 563 (Ky. App. 2019) (citations omitted).  Both parties rely on *Passmore v. Commonwealth* and agree it is the controlling case on this issue.

In *Passmore*, the district court entered orders setting a bail amount and imposing additional non-financial conditions of release of Jesse Passmore. One of those conditions was a prohibition from violating any state, local, or federal laws.  *Id.* at 559.

Jesse was still in custody when the circuit court assumed jurisdiction upon the grand jury's return of indictments.  *Id.*  The circuit court's pre-printed order left blank the field where the nonfinancial conditions could be included, carrying over from the district court's bail form only the amount of the bond.  *Id.*

Cassandra Passmore posted bond for Jesse, and signed an AOC-365.1 form; however, the circuit clerk selected none of the nonfinancial conditions listed on the form.  *Id.* at 559-60.  When Cassandra posted bond, the circuit court record only reflected that Jesse's bond would be subject "to the nonfinancial conditions generally associated with bail"; Cassandra, under penalty of forfeiture as surety, undertook to ensure Jesse would appear in court as required and would make

-5-

himself amenable to the orders and process of the court. *Id.* at 559. Prior to Jesse's release on bond, "nothing in the circuit court's record indicated there would be any nonfinancial conditions attached to the terms of Jesse's bail." *Id.*

Jesse was later arrested and charged with a new offense, and the circuit court granted the Commonwealth's motion to forfeit the bond. *Id.* at 560-61. We reversed. We did not agree with the circuit court's implication that

> the conditions of Jesse's bail set forth in Jefferson District Court "carried over" or were "continued" by operation of some contractual or legal principle. To be sure, in the AOC-365.1 form Cassandra executed, Cassandra promised as surety that Jesse would render himself "amenable to the orders and process of this and any other court in which this proceeding may be *pending* for any and all purposes and at all stages (including, in the event of indictment, proceedings thereafter) in accordance with RCr 4.54." (Emphasis added.) Moreover, RCr 4.54(1) provides in part that "bail *taken* at any stage of the proceedings shall continue in effect to insure the appearance of the defendant for any and all purposes at all stages of the proceedings[.]" (Emphasis added.)

> But, Jesse was never released on bail while his case was *pending* before the district court. Consequently, the bail offered by the district court – which did include both nonfinancial conditions at issue in this matter – was not the bail that Jesse *took* on September 26, 2017. Rather, upon his indictment on January 30, 2017, jurisdiction over Jesse's bail passed from the district court to the circuit court. RCr 4.54(1). The circuit court was then required to fix bail. RCr 6.54(1). And when the circuit court did so, the district court's prior bail order expired, and any requirements which attended it did not automatically "carry over," but instead became moot and unenforceable.

*Id.* 562-63.

Noting that "[c]ourts speak only through their written, signed, and entered orders[,]" we observed the circuit court never explicitly adopted the district court's nonfinancial conditions in any of its orders. *Id.* at 562. We also disagreed that nonfinancial conditions could carry over impliedly once a circuit court obtains jurisdiction of a case "by operation of some contractual or legal principle"; thus, nonfinancial conditions do not apply "unless explicitly stated so." *Id.* at 563. Pertinent to the present case, we disagreed in *Passmore* that the nonfinancial condition that an individual engage in no further violations of the law is a foreseeable condition and basis of forfeiture implied in every bond. *Id.*

We agree with the Commonwealth that the present case is distinguishable from *Passmore*. As noted above, the circuit court's April 1, 2019 order of arraignment explicitly states that "[t]he Defendant shall commit no additional offenses[.]" The order also stated that "an arrest warrant will issue and bond will be revoked if the conditions are violated." Additionally, the AOC-365.1 form, which both Foy and Ferrell signed upon his release on bond, the box next to "no further violations of law" is checked. Accordingly, the circuit court in the present case did not rely, as the circuit court in *Passmore* did, on any district court order or its own AOC-365.1 form – which had the at-issue nonfinancial conditions selected – and, indeed, spoke "through [its] written, signed, and entered order[.]"

*Id.* at 562. In our view, the circuit court explicitly stated this condition of Foy's bond in a manner consistent with our holding in *Passmore*.

As to Ferrell's second argument, we believe Ferrell had adequate notice of the condition when acting as surety for the bond. Again, a signed and entered order of the circuit court exists in the record which clearly reflects this condition. Additionally, the corresponding box is checked on the AOC-365.1 form. Ferrell had access to both these forms; as the Commonwealth notes, any difficulty in accessing the record from the clerk's office as a result of closure due to COVID-19 would not have arisen until eleven months after the circuit court entered its order, when the courthouse was in fact closed for that reason. In combination, the circuit court's order and the AOC-365.1 form provided Ferrell with sufficient notice of the terms of Foy's release. And, because this order was indeed entered, we need not answer the question which Ferrell poses regarding whether the AOC-365.1 form, alone, may be treated as a court order for this purpose.

Third, Ferrell asserts the trial court improperly held her responsible for Foy's actions while on release. She argues that, because a surety is unable to force the released individual to conform their conduct to a court's orders, the circuit court improperly held her responsible for Foy's criminal activity while released on bond. As we stated in *Passmore*, and as Ferrell quotes in her brief, "a

principal's subsequent arrest and incarceration during a period of pretrial release has traditionally been viewed as a ground of *exoneration*, not forfeiture." *Id*. at 564 (citing *Miller v. Commonwealth*, 234 S.W. 307, 308 (Ky. 1921)). In *Johnson v. Commonwealth*, Johnson was arrested and subsequently convicted for possessing alcoholic beverages for the purpose of resale in a dry part of the state – *i.e*., one which disallowed the sale of alcohol. 551 S.W.2d 577, 578 (Ky. App. 1977). The circuit court conditioned forfeiture of Johnson's bond upon Johnson not engaging in the resale of alcoholic beverages or possessing such beverages for that purpose; we determined that "a cash forfeiture clause conditioned on misconduct other than failure to appear or surrender as directed by the court may not be made part of the bail order" because such forfeiture constituted the imposition of a penalty "before [Johnson] was even tried for the new offense." *Id*. at 578-79.

However, this rule has since changed, as we now recognize other reasons to impose bond forfeiture other than to ensure an individual appear before the trial court. As this Court noted in *Clemons v. Commonwealth*, it is now the case that "bonds are also used to impose certain non-financial conditions to control the defendant's behavior while on pretrial release." 152 S.W.3d 256, 259 (Ky. App. 2004). Further, "a majority of jurisdictions allow courts to forfeit a defendant's bond if one of those conditions is breached." *Id*. (citations omitted).

And we observed the plain language of KRS[2] 431.545[3] and RCr 4.42[4] that demonstrate the General Assembly's intent to allow forfeiture for violation of nonfinancial bond conditions. *Id.* In the instant case, the bond forfeiture which resulted from Foy's subsequent criminal conduct conforms with the present practice of Kentucky courts, and the circuit court thus did not abuse its discretion in ordering forfeiture of the bond.

Finally, Ferrell argues the circuit court's forfeiture of the entire $100,000 bond on the basis of Foy's subsequent arrest was excessive. As we observed in *Clemons*, "[t]here are no clear-cut rules defining what is and what is not 'excessive[,]'" and an appellate court lacks authority to reverse a forfeiture decision unless the trial court has abused its discretion. *Id.* at 260. Indeed, scant published case law, at least from Kentucky courts, provide little guidance for what

---

[2] Kentucky Revised Statutes.

[3] As relevant, the statute provides: "if a defendant shall willfully fail to appear *or shall willfully fail to comply with the conditions of his release* . . . [t]he court may order a forfeiture of the bail[.]" KRS 431.545(1) (emphasis supplied).

[4] As relevant, the rule provides: "[i]f at any time following the release of the defendant and before the defendant is required to appear for trial the court is advised of a material change in the defendant's circumstances *or that the defendant has not complied with all conditions imposed upon his or her release*, the court having jurisdiction may order the defendant's arrest and require the defendant or the defendant's surety or sureties to appear and show cause why the bail bond should not be forfeited or the conditions of release be changed, or both." RCr 4.42(1) (emphasis supplied). The rule provides further: "Where the court is acting on advice that *the defendant has not complied with all conditions imposed upon his or her release*, the court shall not change the conditions of release or order forfeiture of the bail bond unless it finds by clear and convincing evidence that the defendant has wilfully violated one of the conditions of his or her release or that there is a substantial risk of nonappearance." RCr 4.42(3) (emphasis supplied).

constitutes excessive forfeiture. In the unpublished opinion in *Martin v. Commonwealth*, we listed relevant factors for determining whether a trial court abused its discretion in ordering forfeiture:

> The trial court must find, as the provisions quoted above emphasize, that the violation was willful. Other factors bearing on the propriety of forfeiture or its amount include the seriousness of the condition violated; the deterrence value of the forfeiture; the cost, inconvenience, prejudice, or potential prejudice suffered by the Commonwealth as a result of the breach; whether forfeiture will vindicate a serious injury to the public interest; the appropriateness of the amount of the bond; and any mitigating factors presented by the defendant.

2003 WL 22681798, at *2 (Ky. App. 2003) (citations omitted).

In *Martin*, we determined, though the trial court did not abuse its discretion in awarding forfeiture, that forfeiture of the entire bond was excessive. *Id.* Martin was indicted on charges of incest and rape against his six-year-old daughter, and a condition of his release forbade Martin from having contact with the child. *Id.* at *1. However, Martin violated that condition by visiting with the child at his father's house while the child's mother observed. *Id.* We determined forfeiture of the entire amount to be excessive for several reasons: the bond money belonged to Martin's father and not Martin himself, the visit did not impose costs on the Commonwealth, Martin had not missed any court appearances, and bond forfeiture had a low deterrence value. *Id.* at *2.

We cannot say the circuit court in the current case abused its discretion in requiring forfeiture of the entire bond. The violation was clearly willful, as Foy engaged in additional criminal activity. The violated condition, and the way Foy violated it, was serious, as he pleaded guilty to second-degree strangulation and was sentenced to two years' incarceration. The public has a strong interest in ensuring, insofar as is possible, that individuals released on bond do not engage in further criminal behavior while released and imposing the condition that the released individual not engage in criminal activity promotes that interest. Based on the seriousness of Foy's offenses – Foy was charged, and pleaded guilty to, Attempted Murder, Assault in the First Degree, and Assault in the Second Degree – we cannot say the amount of the bond was inappropriate. Though we recognize the money forfeited was not Foy's but that of the Louisville Bail Fund, we do not believe the circuit court abused its discretion in ordering forfeiture of the entire bond.

## <u>CONCLUSION</u>

We affirm its February 18, 2022 Order granting bond forfeiture.

ALL CONCUR.

BRIEF FOR APPELLANT:

Kevin M. Glogower
Louisville, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Matthew F. Kuhn
Assistant Attorney General
Frankfort, Kentucky